D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

AMERICAN AUTOMOBILE ASSOCIATION, INC.,

                Plaintiff,

-against-

JENE LIMAGE, individually and d/b/a
AAA+ TRANSMISSION,

                Defendant.
-------------------------------------------------------------------X

**DEFAULT JUDGMENT**

**MEMORANDUM & ORDER**

**15-CV-7386 (NGG) (MDG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff American Automobile Association, Inc. ("AAA") initiated this action on December 29, 2015, asserting six federal and state claims related to trademark infringement and unfair competition against Defendant Jene Limage, individually and doing business as AAA+ Transmission. (Compl. (Dkt. 1).) Service was properly executed at Defendant's home address and business premises in early 2016. (Summons (Dkt. 6); Summons (Dkt. 7).) Defendant failed to appear or answer, and on March 18, 2016, the Clerk of Court entered a certificate of default pursuant to Federal Rule of Procedure 55(a). (Entry of Default (Dkt. 11).) On March 22, 2016, Plaintiff moved for default judgment and requested a permanent injunction. (Mot. for Default J. (Dkt. 12).) Defendant has not responded to Plaintiff's motion.

For the reasons stated below, Plaintiff's Motion for Default Judgment is GRANTED in part, with the remaining claims DISMISSED WITHOUT PREJUDICE on grounds of mootness; Plaintiff's request for a permanent injunction is GRANTED.

I.     **BACKGROUND**

The following facts are taken from the Complaint. Because Defendant has defaulted, the court "is required to accept all of [Plaintiff's] factual allegations as true" and to "draw all

1

reasonable inferences in [Plaintiff's] favor."[1] Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

Plaintiff is a not-for-profit, non-stock corporation that "provides its more than fifty million members with a wide variety of automobile-related services and associated referral and discount services throughout the United States, including in New York." (Compl. ¶ 6.) Plaintiff possesses a family of registered trademarks that use the "AAA" acronym (the "AAA Marks"), including "AAA," "AAA Approved Auto Repair," and "AAA Total Repair Care." (Id. ¶ 11.) AAA has used the AAA Marks "widely, continuously, and for decades, throughout the United States and in New York, to identify itself and its automobile club services," including "automobile repair services." (Id. ¶ 10.)

Defendant is the owner and operator of an automobile repair business in Brooklyn, NY, operating under the name "AAA+ Transmission," "AAA+ Transmissions," and/or "AAA+ Transmission & Auto Repair." (Id. ¶ 17.) Defendant's business premises feature signage bearing a "AAA" symbol. (Id. ¶¶ 19, 24; see also Brehm Decl. in Supp. of Mot. for Default J. (Dkt. 12-8) ¶ 5.) Defendant is not authorized to use Plaintiff's AAA Marks. (Compl. ¶ 18.) Since October 2013, Plaintiff has sent multiple letters notifying Defendant of Plaintiff's registered trademarks and requesting that Defendant cease all use of the AAA Marks. (Id. ¶ 23.) Defendant has not changed the business's name or signage. (Id. ¶¶ 23-24.)

## II. DEFAULT JUDGMENT

The Complaint alleges six causes of action. (Compl. ¶¶ 27-49.) Plaintiff now seeks an order of default judgment under Federal Rule of Procedure 55(b) as to all six counts. (Mem. in

---

[1] "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). This distinction is immaterial to the present action in light of Plaintiff's decision to seek only injunctive relief and not to pursue monetary damages. (See Mem. in Supp. of Mot. for Default J. (Dkt. 12-2) at 1.)

Supp. of Mot. for Default J. (Dkt. 12-2) at 1.) Plaintiff does not seek damages at this time. (Id.) Plaintiff's only requested relief is a permanent injunction that (1) prohibits Defendant from various future uses of marks that suggest an affiliation between Defendant's business and Plaintiff's brand; and (2) requires Defendant to destroy all business paraphernalia in his control that contains marks confusingly similar to the AAA Marks. (Id. (referencing Compl. ¶ 50(a).)

The court begins with Plaintiff's claims for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. Chapter 22. Because the court finds that Plaintiff is entitled to default judgment and a permanent injunction on those two claims, the court need not reach Plaintiff's remaining claims. The scope of appropriate injunctive relief would not vary based on the merits of Plaintiff's remaining federal and state-law claims. See, e.g., Pretty Girl, Inc. v. Pretty Girl Fashions, Inc., 778 F. Supp. 2d 261, 269 (E.D.N.Y. 2011) (finding for the plaintiff on a Lanham Act claim, and declining to reach additional claims because the "scope of the [injunctive] relief sought at this stage . . . is identical regardless of whether the Plaintiff would be likely to succeed on any of its additional claims").

A. **Legal Standard**

"[B]efore a district court enters a default judgment, it must determine whether the allegations in [the] complaint establish the defendant's liability as a matter of law." Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F. App'x 54, 56 (2d Cir. 2013) (citing Finkel, 577 F.3d at 84). That is, the well-pleaded allegations must be "sufficient to state a cause of action against the defendant." (Id.) Once that requirement has been met, motions for default judgment are "left to the sound discretion of a district court." Palmieri v. Town of Babylon, 277 F. App'x 72, 74 (2d Cir. 2008) (quoting Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999)).

3

**B.     Discussion**

Plaintiff asserts claims of trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (Compl. ¶¶ 27-34.) The court considers these two claims together because they are both governed by the same legal standard. See Virgin Enterps. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003); see also, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc., No. 14-CV-0946 (JS) (AKT), 2015 WL 1299259, at *7 (E.D.N.Y. Mar. 23, 2015).

Lanham Act claims of trademark infringement and false designation of origin are analyzed under a two-prong test. "The first prong looks to whether the senior user's mark is entitled to protection; the second to whether the junior user's . . . mark is likely to cause consumers confusion as to the origin or sponsorship of the junior user's goods." Guthrie Healthcare Sys. v. ContextMedia, Inc., No. 14-CV-3343 (L), 2016 WL 3245039, at *6 (2d Cir. June 13, 2016). The court finds that Plaintiff has satisfied both elements of this test.

    1.     Entitlement to Protection

With regard to the first prong, registration with the United States Patent and Trademark Office ("PTO") is "prima facie evidence that the mark is registered and valid (i.e., protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Id. (quoting Lane Capital Mgmt. v. Lane Capital Mgmt., 192 F.3d 337, 345 (2d Cir. 1999)).

Plaintiff has registered "more than one hundred of its trademarks" with the PTO, including many AAA Marks. (Compl. ¶ 11.) Moreover, "[m]any of the AAA Marks . . . have been used continuously for at least five years since their registration and have thus become 'incontestable' under section 15 of the Lanham Act . . . ." (Id. ¶ 12 (citing 15 U.S.C. § 1065).)

The incontestable status of Plaintiff's marks constitutes "conclusive evidence" of Plaintiff's "ownership of the mark[s]" and "exclusive right to use the registered mark[s] in commerce." 15 U.S.C. § 1115(b).

Therefore, Plaintiff's AAA Marks are entitled to protection.

2. Likelihood of Consumer Confusion

The second prong of the test "turns on whether ordinary consumers 'are likely to be misled or confused as to the source of the product in question because of the [new mark's] entrance in the marketplace . . . .'" Guthrie Healthcare Sys., 2016 WL 3245039, at *6 (quoting Playtex Prods., Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 161 (2d Cir. 2004), superseded by statute on other grounds, as recognized in Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 108 (2d Cir. 2009)). To determine "whether a defendant's use of a mark will likely cause confusion, courts 'apply the eight-factor balancing test introduced in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961).'" Sola Franchise Corp., 2015 WL 1299259, at *8 (quoting Starbucks Corp., 588 F.3d at 115). The eight factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

Starbucks Corp., 588 F.3d at 115. "No single factor is dispositive . . . ." Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 130 (2d Cir. 2004). The analysis is "not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 384 (2d Cir. 2005).

5

Based on Plaintiff's uncontested evidence, and drawing all reasonable inferences in Plaintiff's favor, Finkel, 577 F.3d at 84, the Polaroid factors weigh overwhelmingly in favor of a finding that Defendant's mark is likely to cause confusion.

### a. Strength of Plaintiff's Marks

"[C]onsumers and members of the public recognize that goods and services marketed under the AAA Marks originate from, are approved or endorsed by, or are affiliated with, AAA." (Compl. ¶ 15.) Thus, the AAA Marks possess "inherent distinctiveness" because they "uniquely identify a product's source, as opposed to simply describing what is for sale." Krevat v. Burgers to Go, Inc., No. 13-CV-6258 (JS) (AKT), 2014 WL 4638844, at *8 (E.D.N.Y. Sept. 16, 2014) (quoting Virgin, 335 F.3d at 147). The marks also possess "acquired distinctiveness" because of "the extent to which prominent use of the mark in commerce has resulted in a high degree of consumer recognition." Id. (quoting Virgin, 335 F.3d at 147). The court therefore finds Plaintiff's marks to be very strong.

### b. Similarity of the Marks

"There is a strong indication of similarity when the marks at issue share a word." Balady, Inc. v. Elhindi, No. 14-CV-855 (SJ) (RER), 2014 WL 7342867, at *7 (E.D.N.Y. Dec. 23, 2014) (citing Virgin, 335 F.3d at 149). In this instance, Plaintiff's and Defendant's marks both prominently feature a triple capital "A." The coloration, too, is similar. Plaintiff's AAA Marks display "AAA" in red text, surrounded by a red circle and set against a blue crescent. A photo submitted by Plaintiff shows that Defendant's signage transposes those same two colors, using blue text for "AAA" and red text for the small "+" sign and the word "TRANSMISSION." (Google Maps Web Page (Dkt. 12-5).) Thus, the court finds the two marks to be similar.

### c. *Competitive Proximity*

This factor examines the extent to which "the two products are in related areas of commerce," as well as "the geographic separation of the products." Brennan's, 360 F.3d at 134. Defendant operates an automobile repair business in Brooklyn, NY. (Compl. ¶ 7.) Plaintiff has approved the use of the AAA Mark for "eight automobile repair shops in the five boroughs of New York City," including two in Brooklyn. (Brehm Decl. in Supp. of Mot. for Default J. ¶ 4.) The court finds that there is a high degree of competitive proximity.

### d. *Bridging the Gap*

"'Bridging the gap' refers to the likelihood that the senior user will enter the junior user's market in the future." Sola Franchise Corp., 2015 WL 1299259, at *11 (quoting Star Indus., 412 F.3d at 387). Where, as here, the senior and junior users "are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant to the Polaroid analysis in this case." Star Indus., 412 F.3d at 387.

### e. *Evidence of Actual Consumer Confusion*

Plaintiff has presented no evidence of actual consumer confusion. However, "it is 'black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source.'" Guthrie Healthcare Sys., 2016 WL 3245039, at *13 (emphasis added) (quoting Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986)).

### f. *Defendant's Bad Faith*

"Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Sola Franchise Corp., 2015 WL 1299259, at *11

7

(quoting Star Indus., 412 F.3d at 387). Plaintiff has presented no evidence of bad faith in Defendant's initial choice to adopt the "AAA+" mark. Plaintiff argues instead that Defendant has demonstrated bad faith in the period following adoption of the mark by refusing Plaintiff's requests to cease the alleged infringing uses. (Mem. in Supp. of Mot. for Default J. at 12.) The court need not decide whether evidence of bad faith in the continued use of a mark—as opposed to bad faith in the mark's adoption—bears on the Polaroid test because, in this instance, the other factors are dispositive on their own weight. See Guthrie Healthcare Sys., 2016 WL 3245039, at *12 ("Bad faith is not an essential element of a claim of infringement.").

### g. *Respective Quality of the Products*

"The issue of the quality of the secondary user's product goes more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion" itself. Virgin, 335 F.3d at 152. The court thus reviews Plaintiff's evidence of respective quality in the context of Plaintiff's request for a permanent injunction, where consideration of Plaintiff's injuries is most relevant. See Section III.B.1, below.

### h. *Sophistication of Consumers in the Relevant Market*

"An analysis of consumer sophistication considers 'the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods.'" Krevat, 2014 WL 4638844, at *10 (quoting Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 965 (2d Cir. 1996)). Plaintiff has submitted no direct evidence of consumer sophistication, but argues that "[c]onsumers of automobile repair services are ordinary consumers who are likely to be confused by identical marks used for identical services." (Mem. in Supp. of Mot. for Default J. at 13.)

8

The court agrees that the purchasers of auto repair services are likely not "highly trained professionals" who "know the market and are less likely than untrained consumers to be misled or confused by the similarity of different marks." Virgin, 335 F.3d at 151; see also Star Indus., 412 F.3d at 387 ("[I]n some cases a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price."). Absent conflicting evidence, and drawing all reasonable inferences in Plaintiff's favor, the court accepts Plaintiff's allegation that "consumers are likely to believe—erroneously—that Defendant is associated, affiliated, or connected with AAA, or that AAA has sponsored, authorized, approved, or endorsed Defendant's business, products, or services." (Compl. ¶ 3.) Thus, this Polaroid factor weighs in favor of finding a likelihood of consumer confusion.

\* \* \*

After weighing the eight Polaroid factors, the court finds a high likelihood of consumer confusion. Four factors weigh in favor of this finding—especially strength of the mark and competitive proximity—and the remaining factors are neutral.

### C. Conclusion

The court finds that the allegations in Plaintiff's Complaint state valid causes of action for trademark infringement under Section 32 of the Lanham Act, and false designation of origin under Section 43(a) of the Lanham Act. The court thus grants Plaintiff's Motion for Default Judgment with respect to those two claims. See Finkel, 577 F.3d at 84. Because the court finds that these claims justify the full extent of Plaintiff's requested injunctive relief, as explained below, Plaintiff's remaining claims are dismissed without prejudice on grounds of mootness. See, e.g., Brooklyn Heights Ass'n v. Nat'l Park Serv., 818 F. Supp. 2d 564, 570 (E.D.N.Y. 2011) (vacating an administrative decision based on two of plaintiffs' claims, and dismissing as moot plaintiffs' remaining claims because they sought identical relief).

## III. INJUNCTIVE RELIEF

Plaintiff requests[2] a permanent injunction requiring Defendant and his agents, servants, employees, attorneys, and any and all persons in active concert or participation with him:

> (1) immediately and permanently to cease and desist from all use of the AAA Marks, of any combinations of the letters "A," of AAA's orbital design, or any other confusingly similar mark in any form or manner that resembles, suggests, or intimates that Defendant's business is approved or endorsed by, or otherwise affiliated with AAA;
>
> (2) pursuant to section 36 of the Lanham Act, 15 U.S.C. § 1118, to destroy all literature, signs, billboards, labels, prints, packages, wrappers, containers, advertising materials, stationery, and other items in [his] possession or control that contain the AAA Marks or any term, symbol, or logo confusingly similar to those marks; and to destroy any and all means in [his] possession or control of making any of those infringing items;
>
> (3) to delete or remove from any publication any advertisements paid for or used by [him] containing any of the AAA Marks and any other name, mark, or logo confusingly similar to them;
>
> (4) to delete, destroy, and remove all electronic content, including all websites, domain names, and other electronic materials displaying the AAA Marks and any other name, mark, or logo confusingly similar to them;
>
> (5) to instruct third parties to remove any reference to the AAA Marks and any name, mark, or logo confusingly similar to them on websites, publications, or other electronic materials;
>
> (6) immediately and permanently to cease use of any search engine optimization techniques or ad words or key words, that use the AAA Marks; and
>
> (7) to file with the Court and serve on AAA, within thirty days after the entry of an injunction, a report in writing under oath setting forth in

---

[2] This order reproduces the injunction requested in the Complaint. (Compl. ¶ 50(a).) Plaintiff's Proposed Order, submitted as an attachment to the Motion for Default Judgment, included an additional feature requiring Defendant to "cancel, withdraw, or change any and all trade names registered with the New York Secretary of State." (Proposed Order (Dkt. 12-9) at 4.) The court declines to grant this additional element at this time. The requested addition is unduly broad because the scope is not limited to trade names that are confusingly similar to the AAA Marks. Plaintiff has not submitted evidence of any trade names currently registered by Defendant, nor has Plaintiff justified this addition to its requested relief. The court therefore finds that the injunction requested in the Complaint is sufficient to protect Plaintiff's interests.

detail the manner in which Defendant has complied with the Court's injunction and orders.

(Compl. ¶ 50(a).)

### A. Legal Standard

"A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Stark Carpet, 954 F. Supp. 2d at 157 (quoting Kingvision Pay-Per-View Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006)). The first prong is satisfied in this instance because the Lanham Act vests courts with the "power to grant injunctions . . . to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . ." 15 U.S.C. § 1116(a). With respect to the second prong, Plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### B. Discussion

The court finds that Plaintiff has satisfied all four eBay requirements, and therefore grants Plaintiff's permanent injunction, consistent with this Memorandum and Order.

#### 1. Irreparable Injury

Although the law formerly recognized a presumption of irreparable harm upon a showing of likely consumer confusion, the Second Circuit now requires that courts "actually consider the injury the plaintiff will suffer . . . ." Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010). "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to

11

replace or difficult to measure, or that it is a loss that one should not be expected to suffer." Id. at 81.

"Irreparable harm exists," for example, when the moving party "shows that it will lose control over the reputation of its trademark[,] because loss of control over one's reputation is neither calculable nor precisely compensable." U.S. Polo Ass'n v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) (alterations omitted) (quoting New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010)); see also, e.g., Balady, 2014 WL 7342867, at *12 (finding irreparable injury because "the reputation and goodwill that [Plaintiff's] mark has amassed over the last decade will be out of Plaintiff's control" due to the likelihood of consumer confusion with Defendant's mark).

Consistent with this standard, Plaintiff alleges irreparable injury "because AAA has lost control over the nature and the quality of the goods and services that are being sold and advertised under its AAA Marks." (Compl. ¶ 26.) Moreover, Plaintiff's evidence shows that AAA+ Transmission has received six consumer complaints over the last three years, and has also received an "F" rating from the Better Business Bureau. (BBB Web Page (Dkt. 12-4).) Plaintiff has thus established a risk that its "reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." Krevat, 2014 WL 4638844, at *10 (quoting Sports Auth., 89 F.3d at 961).

2. Inadequacy of Remedies at Law

Defendant has ignored Plaintiffs' repeated requests to cease use of the infringing marks (Compl. ¶¶ 23-24), and has failed to appear in this action in any way. "In the absence of assurances in the record against a defendant's continued infringing activity, a remedy at law may be deemed insufficient to compensate plaintiff for [its] injuries." Sola Franchise Corp., 2015

WL 1299259, at *18 (quoting Stark Carpet, 954 F. Supp. 2d at 158). Accordingly, the court finds that Plaintiff's remedies at law are inadequate.

3. Balance of Hardships

"The balance of hardships clearly tips in plaintiff's favor where it has established irreparable harm," where "distribution of the infringing conduct is likely to continue absent injunctive relief," and where "plaintiff has already incurred substantial legal costs in protecting its trademark rights." Hilton v. Int'l Perfume Palace, Inc., No. 12-CV-5074 (JFB) (GRB), 2013 WL 5676582, at *13 (E.D.N.Y. Oct. 17, 2013) (alterations omitted) (quoting AW Indus. v. Sleepingwell Mattress, Inc., No. 10-CV-4439 (NGG) (RER), 2011 WL 4404029, at *11 (E.D.N.Y. Aug. 31, 2011), report and recommendation adopted, No. 10-CV-4439 (NGG) (RER), 2011 WL 4406329 (E.D.N.Y. Sept. 21, 2011)). Given Defendant's default, there is nothing in the record to suggest that Defendant would face extreme hardship in continuing its business under a different, non-infringing name. The court thus finds that the balance of hardships favors Plaintiff.

4. Public Interest

"[T]he public has an interest . . . in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." Balady, 2014 WL 7342867, at *13 (quoting New York City Triathlon, 704 F. Supp. 2d at 344). "[E]njoining [Defendant] from further infringement prevents such confusion," and thereby serves the public interest. Sola Franchise Corp., 2015 WL 1299259, at *18 (quoting AW Indus., 2011 WL 4404029, at *1).

\* \* \*

The court concludes that Plaintiff has demonstrated its entitlement to a permanent injunction.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment is GRANTED in part and DISMISSED WITHOUT PREJUDICE on grounds of mootness with regard to the remaining claims; Plaintiff's request for a permanent injunction is GRANTED, with terms as set forth in a separate order issued herewith.

SO ORDERED.

Dated: Brooklyn, New York
August 26, 2016

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge